**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

WILLIAM H. EMMONS,

                              Plaintiff,

        v.                                              No. 03-CV-638
                                                          (LEK/DRH)

JO ANNE B. BARNHART, Commissioner of
Social Security,
                              Defendant.
_____

**APPEARANCES:**                        **OF COUNSEL:**

OLINSKY & DiMARTINO                      HOWARD D. OLINSKY, ESQ.
Attorney for Plaintiff
Historic First National Bank
186 West First Street
Oswego, New York 13126

HON. GLENN T. SUDDABY                    WILLIAM H. PEASE, ESQ.
United States Attorney for the           Assistant United States Attorney
    Northern District of New York
Attorney for Defendant
100 South Clinton Street
Post Office Box 7198
Syracuse, New York 13261-7198

**DAVID R. HOMER**
**U.S. MAGISTRATE JUDGE**

### REPORT-RECOMMENDATION AND ORDER[1]

        Plaintiff William H. Emmons, Jr. ("Emmons") brought this action pursuant to 42

U.S.C. § 405(g) seeking review of a decision by the Commissioner of Social Security

("Commissioner") denying his application for benefits under the Social Security Act.

Emmons moves for a finding of disability and the Commissioner cross-moves for a

_____

        [1]This matter was referred to the undersigned for report and recommendation
pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(d).

judgment on the pleadings. Docket Nos. 10, 13. For the reasons which follow, it is recommended that the Commissioner's decision be affirmed and Emmons' motion for a finding of disability be denied.


## I. Procedural History

On March 13, 2000, Emmons filed an application for disability insurance benefits pursuant to the Social Security Act, 42 U.S.C. § 401 et seq. T. 81-83.[2]  That application was denied after the initial determination and following reconsideration. T. 58-65.  Emmons requested a hearing before an administrative law judge (ALJ), T. 70, which was held before ALJ Joachim J. Volhard on June 14, 2001. T. 39-57.  Emmons was represented by counsel. T. 38. In a decision dated October 18, 2001, the ALJ denied Emmons' claims. T. 27-37. On April 11, 2003, the Appeals Council denied Emmons' request for review, thus making the ALJ's findings the final decision of the Commissioner. T. 19-21. This action followed.


## II. Contentions

Emmons contends that the ALJ erred when he (1) failed to consider the combination of his impairments; (2) failed to find that his impairments met or equaled the listed impairments; (3) failed to seek an updated opinion of a medical expert as to whether Emmons' back impairment was sufficiently severe; (4) found that Emmons could perform light work; and (5) found Emmons not disabled. The Commissioner contends that there was substantial evidence to support the determination that Emmons was not disabled.

---

[2] "T." followed by a number refers to the pages of the administrative transcript filed by the Commissioner.  Docket No. 8.

### III. Facts

Emmons is currently fifty-three years old, previously worked as a machine operator, lot attendant at a car dealership, and maintenance mechanic, and has an eleventh grade education. T. 53, 58, 81, 98, 103. Emmons alleges that he became disabled on December 6, 1999 due to chronic lumbar radiculopathy,[3] hip problems, chronic obstructive pulmonary disease (COPD), [4] and chest pain. T. 97, 156-58.

### IV.  Standard of Review

### A. Disability Criteria

A claimant seeking disability benefits must establish that "he [or she] is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 1382c(a)(3)(A) (2002).  In addition, the claimant's impairments must be of such severity that he or she is not able to do previous work or any other substantial gainful work considering the claimant's  age, education, and work experience, regardless of whether such work exists in the immediate area, whether a specific job vacancy exists, or whether the claimant would be hired if he or she applied for work. 42 U.S.C. § 1382c(a)(3)(B) (2002).

The Commissioner uses a five-step process, set forth in 20 C.F.R. § 416.920, to

---

[3] Radiculopathy is a disease or abnormality of a nerve root.  5-R Schmidt's Attorneys' Dictionary of Medicine 218 (2004) [hereinafter "Schmidt's"].

[4] "Any one of a group of diseases comprising emphysema, bronchial asthma, chronic bronchitis, bronchiectasis, and cystic fibrosis marked by chronic obstruction of the bronchial tubes." 2-CH-CZ Schmidt's 1833.

evaluate SSI disability claims:

> First, the [Commissioner] considers whether the claimant is
> currently engaged in substantial gainful activity. If he [or she] is
> not, the [Commissioner] next considers whether the claimant has
> a 'severe impairment' which significantly limits his [or her]
> physical or mental ability to do basic work activities. If the
> claimant suffers such an impairment, the third inquiry is whether,
> based solely on medical evidence, the claimant has an
> impairment which is listed in Appendix 1 of the regulations. If
> the claimant has such an impairment, the [Commissioner] will
> consider him [or her] disabled without considering vocational
> factors such as age, education, and work experience; the
> [Commissioner] presumes that a claimant who is afflicted with a
> 'listed' impairment is unable to perform substantial gainful
> activity. Assuming the claimant does not have a listed
> impairment, the fourth inquiry is whether, despite the claimant's
> severe impairment, he [or she] has the residual functional
> capacity to perform his [or her] past work. Finally, if the claimant
> is unable to perform his [or her] past work, the [Commissioner]
> then determines whether there is other work which the claimant
> could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982); see 20 C.F.R. § 416.920 (2004).

The plaintiff has the burden of establishing disability at the first four steps. Shaw v. Chater, 221 F.3d 126, 132 (2d Cir. 2000). However, if the plaintiff establishes that an impairment prevents him or her from performing past work, the burden then shifts to the Commissioner to determine if there is other work which the claimant could perform. Id.

### B. Scope of Review

The reviewing court must determine if the commissioner has applied the proper legal standards and if the decision is supported by substantial evidence. Machadio v. Apfel, 276 F.3d 103, 108 (2d Cir. 2002). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Shaw, 221 F.3d at

4

131 (citations omitted). It must be "more than a mere scintilla" of evidence scattered throughout the administrative record. Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)); Curry v. Apfel, 209 F.3d 117, 122 (2d Cir. 2000). The ALJ must articulate specific factors to allow the reviewing court to determine whether substantial evidence supports the decision. Ferraris v. Heckler, 728 F.2d 582, 587 (2d Cir. 1984). If the Commissioner's finding is supported by substantial evidence, it is conclusive and on review, the court cannot substitute its interpretation of the administrative record for that of the Commissioner. Yancey v. Apfel, 145 F.3d 106, 111 (2d Cir. 1998); Bush v. Shalala, 94 F.3d 40, 45 (2d Cir. 1996).

## V.  Discussion

### A. Medical Evidence

While at work as a machine operator in December 1999, Emmons experienced sudden pain in his hip and was unable to walk. T. 43-44. An x-ray showed mild arthritic and cystic changes in both hips, minimal narrowing of the joint space, no acute fracture or dislocation, and no bony destruction. T. 157.  A magnetic resonance image (MRI) of the right hip showed no vascular necrosis or joint effusion, no destructive abnormalities, and there was a single isolated abnormality which was likely arthritic or an old post-traumatic change. T. 145-46.

On December 28, 1999, Emmons was examined by Dr. Nicholas M. Ricciardi, who noted that Emmons walked with an obvious limp and was unable to straighten up. T. 156. Heel-and-toe stance was intact, seated straight-leg raising was negative, Emmons' right

thigh measured 19" and his left thigh measured 17½", there was some clawing of the toes of the left foot, a neurological examination was intact, and there was no focal motor loss. T. 156-57.

On January 17, 2000, Dr. Mahender R. Goriganti noted that Emmons used a cane and complained of pain which radiated from his hip to his knee. T. 169. Emmons' left foot showed significant clawing of the toes with hammer deformities. T. 170. Motor examination revealed normal tone, bulk, and strength bilaterally. T. 170. The diagnosis was osteoarthritis of the right hip and chronic low back pain with radiating pain in the right L3-4 distribution. T. 171. On February 4, 2000, Emmons had a restricted range of motion in the lumbar spine and right hip, no neurological deficits, and some deformities in both feet. T. 158. Electromyographic (EMG) nerve conduction studies showed chronic lumbar radiculopathy of multiple nerve roots with chronic denervation and reinvernation of L-4-5 and S1 with acute changes on the right side. T. 158, 160-68.

In April 2000, Dr. Glen Miskovsky, a treating physician, found that Emmons could lift and carry up to fifteen pounds occasionally, could stand and walk for less than two hours per day, could sit up to six hours per day, could not drive or ambulate fifty feet without rest, and that Emmons' work up and treatment were not complete at that time. T. 173-76. On April 18, 2000, Dr. Timothy Ford found that Emmons did not have obstructive coronary disease but that he had an anomalous right coronary artery. T. 221-22.

On April 24, 2000,  Dr. Kalyani Ganesh conducted a consultative examination of Emmons. T. 177-80. Emmons' gait was normal with no limp and the use of his cane did not appear to be necessary. T. 178. Emmons had a full range of motion in all joints except the right hip, there were no joint abnormalities, the lumbar spine showed full flexion, and

6

straight-leg raising was negative. T. 179. There was no sensory deficit, deep tendon reflexes were physiological and equal, and there was no cyanosis, no clubbing, no muscle atrophy, and no edema. The diagnosis was post lower back surgery and chronic lower back pain with radiculopathy. T. 179-80. Dr. Ganesh found that Emmons did not have gross physical limitation for sitting, standing, walking, climbing, or the use of his upper extremities, but did have a mild-to-moderate limitation for lifting, carrying, pushing, and pulling. T. 180.

A chest x-ray in April 2000 showed COPD and a mildly increased heart size. T. 181. A lumbrosacral spine x-ray showed a narrowing of the disc space at L1-2 and L4-5, no spondylolisthesis, a mild anterior degenerative change, and the lumbar lordotic curvature was preserved. T. 181. On June 7, 2000, a pulmonary function test was abnormal and revealed a mild obstruction. T. 184-88.

Emmons was treated at St. Joseph's Hospital Health Center by Drs. Rene Rodriguez-Goodemote, Glenn Miskovsky, and Miriam Mullin from May 2000 until August 2001. T. 212-59. In August 2000, Dr. Rodriguez-Goodemote found that Emmons could occasionally lift or carry five to ten pounds, could stand and walk less than two hours per day, could sit less than six hours a day, and was limited in the amount that he could push and pull. T. 198-202. Emmons used a cane to transfer from sitting to standing position and to ambulate, his trunk was slightly flexed at all time, and his gait was slow, deliberate, and unsteady. T. 199-201. There was a limitation in the flexion and extension of his hip and spine. T. 203-04. On October 16, 2000, there was no muscle spasm, straight-leg raise was negative, and Emmons walked easily with a cane. T. 220. Dr. Rodriguez-Goodemote found that Emmons could return to work with a fifteen pound lifting restriction and that his work duties were confined to a sitting position or using foot pedals and hand levers. T. 220.

7

## B. Combination of Impairments

Emmons contends that the ALJ failed to consider the combination of impairments at step two of the sequential analysis. The Commissioner contends that the ALJ properly considered Emmons' impairments.

As stated above, step two of the sequential evaluation process requires a determination as to whether the claimant has a severe impairment which significantly limits the physical or mental ability to do basic work activities.  An impairment is severe if it causes more than minimal functional limitations. 20 C.F.R. § 416.924(c) (2004). The severity analysis does no more than "screen out de minimis claims." If the disability claim rises above the de minimis level, then further analysis is warranted. See Dixon v. Shalala, 54 F.3d 1019, 1030 (2d Cir. 1995).  Where a claimant alleges multiple impairments, the combined effects of all impairments must be considered, regardless of whether any impairment, if considered separately, would be of sufficient severity. The next inquiry is whether a claimant retained the residual functional capacity (RFC) to perform his or her past work. This inquiry must consider the combined effect of any impairments, whether or not they are severe, through the remaining steps. 20 C.F.R. § 404.1523 (2004); Dixon, 54 F.3d at 1031.

Here, the ALJ found that Emmons' impairments produced a limitation that met the definition of severe. T. 31. The ALJ next found that the combination of Emmons' impairments did not meet those listed in Appendix 1 to Subpart P, Regulation No. 4. T. 31. The ALJ specifically found that Emmons' back impairment was severe and noted that there was a finding that Emmons' chest pains were not of cardiac etiology and presumably were not severe. T. 33.

The ALJ's finding that Emmons' chest pain was not a severe impairment is supported by substantial evidence. Dr. Ford found that Emmons did not have obstructive coronary disease and a heart catheterization showed no obstructive coronary disease. T. 154, 221. In addition, an exercise nuclear scan showed a normal wall motion, thickening of all myocardial segments, the left ventricular function was intact, and there was no evidence of ischmia or infarction. T. 152. Emmons' heart had a regular rate and rhythm with normal sounds and no evidence of murmur gallop or rub. T. 253. There were no restrictions in the record pertaining to COPD. Therefore, the ALJ properly considered the combination of Emmons' impairments in making his assessment as to their severity.

It is recommended that the Commissioner's finding in this regard be affirmed.

### C. Listing of Impairments

In points two and three of his memorandum of law, Emmons contends that the ALJ erred when he failed to find that Emmons' impairment equaled Listing 1.04 and failed to seek an updated opinion as to whether Emmons' impairment met or equaled Listing 1.04. The Commissioner contends that the ALJ properly evaluated the severity of Emmons' impairments.

As described above, once the ALJ finds that the claimant has a severe impairment, the next step is to determine whether the claimant has an impairment which is listed in Appendix 1 of the regulations. Berry, 675 F.2d at 467; 20 C.F.R. § 416.920 (2004). If the ALJ finds that a claimant has an impairment in the listing, then the claimant is considered disabled without considering vocational factors such as age, education, and work experience and an inability to perform substantial gainful activity is presumed. Berry, 675

9

F.2d at 467; 20 C.F.R. § 416.920 (2004). An impairment is medically equal to a listed impairment "if the medical findings are at least equal in severity and duration to the listed findings" based on medical evidence, including clinical and laboratory diagnostic techniques. 20 C.F.R. § 416.926 (2004).

Here, Emmons contends that his impairment was of the severity which met or equaled 20 C.F.R. Pt. 404. Subpt. P, App. 1 § 104 (disorders of the spine).  However, these listings became effective on February 19, 2002 and governed new applications filed on or after the effective date and therefore did not apply to Emmons' application here, which was filed on March 13, 2000. 66 Fed. Reg. 58,010 (Nov. 19, 2001). The musculoskeletal  listing in effect on the date of Emmons' application was § 1.05C (vertebrogenic disorders),  and this listing was specifically referenced in the ALJ's decision.  50 Fed. Reg. 50,068 (Dec. 6, 1985).

This listing required "a claimant to demonstrate that he [or she] suffers from a vertebrae disorder with the following symptoms persisting for at least three months despite prescribed therapy: (1) pain, muscle spasm, and significant limitation of motion of the spine; and (2) appropriate radicular distribution of significant motor loss with muscle weakness and sensory and reflex loss." 20 C.F.R. § 404, Subpt. P, App.1, § 1.05C (2001); See Johnston v. Heckler, 791 F.2d 933 (6th Cir. 1986).

The ALJ found that Emmons failed to satisfy the requirements of this listing due to the absence of persistent physical findings establishing the presence of "appropriate radicular distribution of significant motor loss with muscle weakness and sensory and reflect loss," and the ALJ also considered the combination of the level of severity. T. 31. There is substantial evidence in the record to support this finding.

10

While there are reports of muscle spasm and a decreased range of motion of the lumbar spine, neurological examinations and nerve conduction studies were essentially normal, deep tendon reflexes were normal, and there were no focal, motor or sensory deficits. T. 156, 170-71, 179, 203-04, 2536. Motor examination revealed normal tone, bulk, and strength bilaterally. T. 170.  Seated straight-leg raising was negative. T. 156. While the record reflects that Emmons had a restricted range of motion in the lumbar spine and some evidence of radiculopathy, there was no diagnosis of motor loss, muscle weakness, or sensory and reflex loss or consistent muscle spasm. T. 158-61. Other examinations revealed that  Emmons had a full range of motion in all joints except the right hip and the lumbar spine showed full flexion. T. 142, 179. X-rays showed disc space narrowing, mild degenerative changes, and no other significant abnormalities.  T. 143, 181. An MRI showed mild-to-moderate disc bulge, mild-to-moderate disc space narrowing and desiccation, and there was no nerve root impingement. T. 141-42. Therefore, the ALJ's conclusion that Emmons' back impairment did not meet or equal a listing is supported by substantial evidence.

In point three of his memorandum of law, Emmons contends that the ALJ failed to seek an updated opinion of a medical expert as to whether Emmons' back impairment was of the severity which was equivalent to that described in the listings.

Social Security Ruling 66-6 specifies two circumstances when an ALJ should obtain an updated opinion on equivalence from a medical expert. The first is when in the opinion of the ALJ, the evidence in the record suggests that a finding of equivalence may be reasonable. Second, the ALJ may seek testimony of a medical expert when additional medical evidence is received that in the opinion of the ALJ, may change the state

consultant's finding concerning equivalence. It is the ALJ, not the state consultant, who "is responsible for deciding the ultimate legal question whether a listing is met or equaled." SSR 96-6p; Uhlig v. Apfel, No. 97 Civ 7629SHS, 1999 WL 350862, at *8 (S.D.N.Y. June 2, 1999).  In finding that a claimant's impairment is not equal in severity to any listing, the expert opinion requirement may be satisfied by the signature of a state agency consultant on a disability determination and transmittal form. SSR 96-6; Uhlig, 1999 WL 350862, at *8.

Here, a state agency consultant completed a disability determination and transmittal form on September 11, 2000 which therefore satisfied the need for an expert opinion. However, Emmons contends that medical records submitted after the completion of this form would have changed the state consultant's finding concerning equivalence. While these aforementioned records indicate a limitation of motion of the spine and decrease of sensation, they also indicate that there were no muscle spasms and that sensation was intact. T. 235, 246, 253. There is no evidence in these records of significant motor loss with muscle weakness and sensory and reflex loss required for a finding that Emmons' impairments were equivalent.  In addition, there are no clinical or laboratory diagnostic techniques to support Emmons' assertion here. This additional evidence, viewed in light of all the evidence, does not support a finding that Emmons' impairments met or equaled a listing.

Therefore, it is recommended that the Commissioner's finding in this regard be affirmed.

### D. RFC

In points four and five of his memorandum of law, Emmons contends that the ALJ erred in finding him capable of light work and that he should be found disabled at step five

pursuant to Medical-Vocational Rule 201.09. The Commissioner contends that the ALJ

properly found that Emmons was capable of light work.

RFC describes what a claimant is capable of doing despite his or her impairments.

20 C.F.R. § 404.1545(a) (2004). "RFC is determined by considering all relevant evidence

consisting of, <u>inter alia</u>, [the claimant's] physical abilities, symptoms including pain . . . [or

other] limitations which go beyond symptoms." <u>Martone v. Apfel</u>, 70 F. Supp. 2d 145, 150

(N.D.N.Y. 1999) (Hurd, J.) (citing 20 C.F.R. §§ 404.1545, 416.945 (1991)). "RFC can only

be established when there is substantial evidence of each physical requirement listed in the

regulations." <u>Smith v. Apfel</u>, 69 F. Supp. 2d 370, 378 (N.D.N.Y. 1999) (Hurd, J.) (citing

<u>LaPorta v. Bowen</u>, 737 F. Supp. 180, 183 (N.D.N.Y. 1990) (McAvoy, J.)).

In assessing RFC, the ALJ must make findings specifying what functions the

claimant is capable of performing, not simply making conclusory statements regarding the

claimant's capabilities. <u>Martone</u>, 70 F. Supp. 2d at 150. RFC is then used to determine

whether the claimant can perform his or her past relevant work or other work in the national

economy. <u>State of N.Y. v. Sullivan</u>, 906 F.2d 910, 913 (2d Cir. 1990); <u>see generally</u> 20

C.F.R. §§ 404.1520, 416.960 (2004).

Here, the ALJ found that Emmons' medically determinable impairments produced

limitations that he was able to carry more than ten pounds frequently or twenty pounds

occasionally and  was capable of performing light work.[5] T. 31. A physical RFC assessment

---

[5] Light work is defined as "lifting no more than 20 pounds at a time with frequent
lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may
be very little, a job is in this category when it requires a good deal of walking or standing,
or when it involves sitting most of the time with some pushing and pulling of arm or leg
controls." 20 C.F.R. § 416.967(b).

completed on June 30, 2000 found that Emmons could occasionally lift and carry twenty pounds; could frequently lift and carry ten pounds; could stand, walk, and sit for six hours in an eight hour workday; and there were no other limitations.  T. 189-96.

Emmons' description of his daily activities supports the ALJ's finding as well. Emmons went grocery shopping, cooked, did some household chores, and drove a car. T. 115. Emmons could bathe, dress, and groom himself, walk a block, stand for a half-hour, and climb a flight of stairs. T.178. In addition, Emmons went back to work plowing snow part-time in November 2000 and testified that he could have done it full-time as long as he took his medication which improved his condition. T. 47. In June 2001, Emmons went to work full-time for a landscaping company which included trimming and mowing lawns, and washing and cleaning offices and banks. T. 47.

The objective evidence also supports this finding. MRIs and x-rays showed only mild degenerative changes and minimal disc narrowing, mild-to-moderate disc bulge with no herniated nuclear polyps, and no nerve root impingement. T. 145-46, 181.  EMGs showed radiculopathy at the L2-3 level and there was no evidence of myopathy, radiculopathy, or neuropathy in any other areas. T. 158-68. Treatment was conservative, no surgery was discussed, and there was no physical therapy, chiropractic visits, or epidural treatments.

While Dr. Rodriguez-Goodemote's opinion does not necessarily support this finding, there were inconsistencies in her opinion. Dr. Rodriguez-Goodemote noted that Emmons had difficulty ambulating on one visit, but during a later visit she noted that Emmons ambulated without a problem. T. 213, 220. Dr. Rodriguez-Goodemote found that Emmons could return to sedentary work but later found that Emmons could return to work with a restriction of no lifting beyond fifteen pounds. T. 235, 246.

14

A physical RFC assessment completed on September 11, 2000 found that Emmons could occasionally lift and carry ten pounds; could frequently lift and carry less than ten pounds; could stand and walk at least two hours in an eight hour workday; could sit for six hours in an eight hour workday; was limited in pushing and pulling in the lower extremities; and that he could occasionally balance, stoop, kneel, crouch, and crawl. T. 205-11. There were no other limitations. T. 208-11. While this assessment does not support the ALJ's findings, the ALJ explained that this assessment was not properly supported by the clinical findings.  This explanation was supported by substantial evidence.

Emmons contends that had the ALJ found him capable of sedentary work, he would have been found disabled using the Medical-Vocational guidelines. However, since there was substantial evidence to support a finding that Emmons was capable of light work, this contention need not be addressed.

Therefore, it is recommended that the Commissioner's finding in this regard be affirmed.


## VI. Conclusion

For the reasons stated above, it is hereby

**RECOMMENDED** that the decision denying disability benefits be **AFFIRMED**, and Emmons' motion for a finding of disability be **DENIED**.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL**

15

**PRECLUDE APPELLATE REVIEW.**  Roldan v. Racette, 984 F.2d 85 (2d Cir. 1993) (citing

Small v. Secretary of HHS, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ.

P. 72, 6(a), 6(e).


DATE: March 31, 2005
       Albany, New York

United States Magistrate Judge

16